## A10A0575. CRUSSELLE v. THE STATE.
### (694 SE2d 707)

MIKELL, Judge.

George W. Crusselle III was found guilty by a jury of driving under the influence of alcohol to the extent that it was less safe for him to drive, driving 90 mph in a 55 mph zone, and failing to have his driver's license in his immediate possession. After a hearing, the trial court denied Crusselle's amended motion for new trial. Crusselle appeals, challenging the sufficiency of the evidence supporting his conviction for DUI less safe and enumerating other errors. For the reasons set forth below, we affirm the judgment.

On appellate review of a criminal conviction, "we view the evidence in a light most favorable to the verdict, and the defendant

no longer enjoys the presumption of innocence."[1] So viewed, the record shows that around midnight on March 9, 2008, Officer John Fox of the DeKalb County Police Department, Special Operations Division, observed Crusselle speeding on Interstate 285. When Crusselle stopped his car and stepped out, Fox observed that Crusselle was unsteady on his feet, his clothes were in disarray, his face was flushed, and his eyes were "bloodshot, watery and glazed." Fox also noticed "an extremely strong odor of an alcoholic beverage about [Crusselle's] body that became stronger as he attempted to speak." Fox testified that Crusselle appeared to be "in a confused state" and that certain words were mumbled. When Fox asked Crusselle for his driver's license, Crusselle presented only a Georgia identification card, which he insisted was a driver's license.

Crusselle's passenger, Kory Rykman, told Fox that Crusselle was "driving like a fool" and that he had asked him to slow down. Rykman also told the officer that he had seen Crusselle "drinking maybe a beer about thirty or forty-five minutes ago" while he and Crusselle were playing "beer pong," a drinking game, at a housewarming party at a friend's house.

Fox asked Crusselle to perform field sobriety tests, but he refused to do so. Crusselle also refused to submit to an alco-sensor test. Based on his observations and his experience and training, Fox determined that Crusselle was under the influence of alcohol to the extent it was less safe for him to drive, placed him under arrest, and read to him the implied consent notice.[2] Fox then asked Crusselle if he would consent to a state-administered chemical test of his breath, but Crusselle declined.

1. Crusselle challenges the sufficiency of the evidence supporting his conviction for DUI less safe, arguing that "[g]iven that there was scant evidence of impairment, [his] conviction should be reversed." This argument does not provide grounds for reversal. As a reviewing court, we do not re-weigh the evidence or determine witness credibility, "but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt."[3]

In order to prove DUI less safe under OCGA § 40-6-391 (a) (1),[4]

---

[1] (Citation omitted.) *Al-Amin v. State*, 278 Ga. 74 (1) (597 SE2d 332) (2004), citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] See OCGA § 40-5-67.1 (b) (2).

[3] *Al-Amin*, supra, citing *Jackson*, supra. Accord *Green v. State*, 244 Ga. App. 565, 566 (1) (536 SE2d 240) (2000).

[4] OCGA § 40-6-391 (a) (1) ("[a] person shall not drive or be in actual physical control of any moving vehicle while . . . [u]nder the influence of alcohol to the extent that it is less safe for the person to drive").

"the state must prove that the defendant had impaired driving ability as a result of drinking alcohol."[5] In this case, contrary to Crusselle's contentions, ample evidence supported his convictions. Fox, an officer with extensive experience and training in DUI detection, testified that in his opinion, Crusselle was under the influence of alcohol to the extent he was less safe to drive, based on Fox's observation of Crusselle's unsteadiness on his feet; his flushed face; his bloodshot, watery, glazed eyes; the strong odor of alcohol about his body; his confused mental state; and his mumbled speech.[6] "A police officer may give opinion testimony as to the state of sobriety of a DUI suspect and whether [he] was under the influence to the extent it made him less safe to drive."[7] According to Rykman, Crusselle had been drinking beer a short time before while playing "beer pong"; and Rykman had asked Crusselle to slow down.[8] Crusselle's refusal to submit to field sobriety tests, the alco-sensor test, and the state-administered breath test is "admissible as circumstantial evidence of intoxication and together with other evidence would support an inference that [Crusselle] was an impaired driver."[9] Moreover, even though a conviction for DUI less safe "does not *require* proof that a person actually committed an unsafe act while driving,"[10] the commission of a traffic violation, such as speeding, "can constitute evidence that a driver is impaired."[11] We conclude that the evidence adduced was sufficient to authorize the jury to find Crusselle guilty beyond a reasonable doubt of DUI less safe.[12]

2. In related enumerations of error, Crusselle asserts that the

---

[5] (Punctuation and footnote omitted.) *Davis v. State*, 301 Ga. App. 484, 486 (1) (687 SE2d 854) (2009).

[6] See *Blankenship v. State*, 301 Ga. App. 602, 603 (1) (a) (688 SE2d 395) (2009) (trained officer's opinion based on defendant's strong odor of alcohol; watery, bloodshot eyes; unsteadiness on his feet); *Davis*, supra at 485 (1) (defendant had odor of alcohol and was confused, slow of speech, swayed while walking; face flushed, eyes "glazy"); *Massa v. State*, 287 Ga. App. 494 (1) (651 SE2d 806) (2007) (officers noted defendant's odor of alcohol; bloodshot, glassy, and watery eyes; face flushed; difficulty walking).

[7] (Citations omitted.) *Lewis v. State*, 214 Ga. App. 830, 832 (1) (449 SE2d 535) (1994). Accord *Hoffman v. State*, 275 Ga. App. 356, 358 (1) (620 SE2d 598) (2005).

[8] See *King v. State*, 262 Ga. App. 37, 41 (6) (584 SE2d 652) (2003) (evidence that passengers told driver to slow down, inter alia, supported driving under the influence of marijuana (less safe) conviction).

[9] (Footnote omitted.) *Massa*, supra at 495 (1) (refusal to submit to field sobriety tests or state-administered chemical test). Accord *Alewine v. State*, 273 Ga. App. 629, 631 (1) (616 SE2d 472) (2005) (same).

[10] (Footnote omitted; emphasis supplied.) *Lee v. State*, 280 Ga. App. 706, 707 (634 SE2d 837) (2006).

[11] (Punctuation and footnote omitted.) *Yglesia v. State*, 288 Ga. App. 217, 218 (653 SE2d 823) (2007) (speeding).

[12] See *Jackson*, supra.

trial court erred in charging the jury as follows:

> A person accused of driving under the influence of alcohol to the extent that he was less safe has the right to refuse to submit to field sobriety exercises, an Alco-Sensor and chemical tests administered by the State. If the State proves such a refusal, however, it is admissible in evidence against him and may be considered as positive evidence creating an inference that the test would show the presence of alcohol, though not that the alcohol impaired his driving.
>
> The inference that the test would show the presence of alcohol may be rebutted. And refusal, by itself, is not determinative of whether the person was under the influence of alcohol.
>
> To sustain a conviction for driving under the influence to the degree it was less safe, the State must prove that alcohol impaired the Defendant's driving ability. Methods of proving this offense may include evidence of refusal to take field sobriety tests and the breath or blood tests.
>
> Furthermore, the commission of a traffic violation can constitute evidence sufficient — I'm sorry, furthermore, the commission of a traffic violation can constitute evidence that a driver is impaired. Whether or not you find such evidence proves impaired driving is a matter solely for you to decide.

"In reviewing an allegedly erroneous jury instruction, this Court applies the plain legal error standard of review."[13]

(a) In his fifth enumeration of error, Crusselle argues that charges given to the jury in the first two paragraphs quoted above constitute reversible error, because they refer to the refusal to submit to field sobriety tests and the alco-sensor test. Crusselle acknowledges that OCGA § 40-6-392 (d) allows a defendant's refusal to submit to state-administered chemical tests to be admitted into evidence against him. He also concedes that the refusal can give rise to an inference that the test would have revealed the presence of alcohol in his blood.[14] Moreover, earlier in his appellate brief, Crusselle concedes that, as to the first paragraph above, "this particular charge was a correct statement of Georgia law." Nonethe-

---

[13] (Punctuation and footnote omitted.) *Duprel v. State*, 301 Ga. App. 469, 472 (2) (687 SE2d 863) (2009).

[14] See *Alewine*, supra ("the refusal to submit to a blood alcohol test created an inference that the test would reveal the presence of a prohibited substance") (citation and punctuation omitted).

less, Crusselle argues that a defendant's refusal to take the preliminary tests cannot support an inference that he was intoxicated. This argument is without merit. "A defendant's refusal to submit to field sobriety tests is admissible as circumstantial evidence of intoxication and together with other evidence would support an inference that he was an impaired driver."[15] This jury charge was not erroneous.

(b) In his second enumeration of error, Crusselle argues that the third paragraph quoted above constitutes reversible error under *Baird v. State*.[16] In *Baird*, this Court found that where the defendant had refused to take the state-administered breath test, it was reversible error to charge the jury that "the refusal itself may be considered as positive evidence creating an inference that the test would show the presence of alcohol or other prohibited substances *which impaired his driving*."[17] Such a charge would allow the jury to infer from the defendant's refusal of testing not only that the test would have revealed the presence of alcohol in his body, but also that the alcohol impaired his driving; this second inference is not permitted from the mere fact of the defendant's refusal to submit to testing.[18] *Baird* distinguished this Court's decision in *Bravo v. State*.[19] In *Bravo*, we ruled that the jury may properly be instructed that they "may" infer the presence of alcohol from the defendant's refusal to take the test, but not that they "shall" do so.[20] Such a charge involves a permissive inference, rather than a mandatory one,[21] and "does not impermissibly shift the burden of proof."[22]

"It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error."[23] We note that the challenged charge immediately follows a proper charge regarding the implications of a defendant's refusal to submit to tests, as we discussed in Division 2 (a) above. "Where a charge as a whole substantially presents issues in such a way as is not likely to confuse the jury even though a portion of the charge may not be as clear and precise as could be desired, a reviewing court will not disturb a verdict amply authorized by the evidence."[24] Such is the case here. Further, Crusselle "has failed to

---

[15] (Footnote omitted.) *Massa*, supra.

[16] 260 Ga. App. 661 (580 SE2d 650) (2003).

[17] (Emphasis in original.) Id. at 662 (1).

[18] Id. at 663 (1).

[19] Id., citing *Bravo v. State*, 249 Ga. App. 433 (548 SE2d 129) (2001).

[20] *Bravo*, supra at 434-435 (2).

[21] Id.

[22] (Footnote omitted.) Id. at 435 (2).

[23] (Punctuation and footnote omitted.) *Duprel*, supra at 473 (2) (a).

[24] (Citation, punctuation and footnote omitted.) *White v. State*, 291 Ga. App. 249, 251 (661 SE2d 865) (2008).

show what harm he suffered as the result of the giving of this particular jury instruction."[25] Thus, reversal is not warranted.

(c) In his fourth enumeration of error, Crusselle challenges the charge given in the fourth paragraph quoted above, on the ground that the charge was not adjusted to the evidence.[26] Crusselle points to Fox's testimony on cross-examination, to the effect that the National Institute of Highway Safety and Traffic Administration does not list speeding as one of the visual cues used to detect impaired drivers. We conclude that this charge is adjusted to the evidence, because the testimony adduced at trial showed that Crusselle was speeding immediately prior to his arrest. Upon finding evidence of speeding, the jury may determine that the driver was impaired.[27] The charge in question properly leaves that determination in the hands of the jury, and is not erroneous.

3. In his third enumeration of error, Crusselle contends that the trial court erred in denying his motion for mistrial, on the ground that the state made improper arguments in closing. We disagree.

Crusselle objected and moved for a mistrial after the prosecutor made the following argument:

> Because the Judge will tell you that the refusal, along with the manifestations that are undisputed in this case, is evidence. And that you can, and our law — of that manifestation, along with the commission offense, is all evidence to show that he is impaired, and will sustain a conviction of impairment. And sustain that alcohol was a factor that impaired his ability to drive.

The judge overruled the objection, and reminded the jury that he would read to them "what the law is."

It is well settled that the permissible range of the state's closing argument is very wide.[28] And the comments challenged here refer to evidence in the case, that is, Crusselle's refusal to submit to testing and other manifestations of impairment, and thus were not improper under OCGA § 17-8-75.[29] "The trial judge in passing upon a motion for mistrial on account of alleged improper argument is vested with

---

[25] (Footnote omitted.) *Massa*, supra at 496 (3).

[26] See *Marryott v. State*, 263 Ga. App. 65, 69 (5) (587 SE2d 217) (2003) ("[a] jury charge must be adjusted to the evidence, apt, and a correct statement of the applicable law") (citation and punctuation omitted).

[27] See *Yglesia*, supra. Accord *Sistrunk v. State*, 287 Ga. App. 39, 40 (651 SE2d 350) (2007) (failure to stop at stop sign).

[28] *Conner v. State*, 251 Ga. 113, 122 (6) (303 SE2d 266) (1983). Accord *Pace v. State*, 271 Ga. 829, 843 (32) (a) (524 SE2d 490) (1999).

[29] See *Varner v. State*, 285 Ga. 300, 301 (2) (b), (c) (676 SE2d 189) (2009).

a broad and sound discretion, and his ruling will not be controlled by this [C]ourt unless manifestly abused."[30] We find no manifest abuse of discretion here.

Further, considering the strength of the state's evidence in this case, it is highly unlikely that this portion of the prosecutor's closing argument contributed to the guilty verdict.[31] Therefore, it is not reversible error, and this enumeration is without merit.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED APRIL 7, 2010 —
RECONSIDERATION DENIED MAY 5, 2010 — 

*McFarland & McFarland, Robert P. McFarland, Jr.*, for appellant.

*Robert D. James, Jr., Solicitor-General, Sophia E. Haynes, Assistant Solicitor-General*, for appellee.

---

[30] (Citation and punctuation omitted.) *Carswell-Danso v. State*, 281 Ga. App. 576, 578 (4) (636 SE2d 735) (2006).

[31] See *Emmanuel v. State*, 300 Ga. App. 378, 382 (4) (685 SE2d 361) (2009).